**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| TONYA THORNHILL, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| CITY OF GREENVILLE, GEORGIA, | ) | **JURY TRIAL DEMANDED** |
| and WAYNE L. FRAZIER, | ) | |
| individually, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff Tonya Thornhill (hereinafter "Plaintiff" or "Ms. Thornhill") submits the following Complaint for Damages and Equitable Relief against Defendant City of Greenville, Georgia ("Defendant Greenville" or the "City") and its Police Chief, Wayne L. Frazier, ("Defendant Frazier") (collectively "Defendants") showing the Court as follows:

## INTRODUCTION

1.

This is an egregious case of sexual harassment, sexual assault, sexual battery, and sex discrimination. The City of Greenville Police Department's Chief of Police,

1

Defendant Frazier, subjected Plaintiff to innumerable lewd sexual comments, sexual assault and battery, forcible rape, unwanted physical touchings, and defamation. To date, Defendant Greenville has failed to take any action to address Defendant Frazier's despicable conduct,  and is liable to Plaintiff under various claims set forth below.

2.

Plaintiff asserts claims for sex discrimination in violation of the Equal Protection Clause of the Constitution of the United States, asserted via 42 U.S.C. § 1983, sex discrimination, sexual harassment and a hostile working environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, as well as multiple Georgia tort claims including assault, battery, negligent hiring, retention, supervision, intentional infliction of emotional distress, and defamation.  Plaintiff seeks back pay and the lost economic benefits of employment, reinstatement or front pay in lieu thereof, compensatory damages, punitive damages against Defendant Frazier, reasonable attorneys' fees and costs of litigation, and all other relief this Court may deem just.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and received a notice of right to sue within the last ninety days. She has complied with all other conditions precedent to the institution of this lawsuit.

## JURISDICTION AND VENUE

4.

Plaintiff's constitutional claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

5.

The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

6.

Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Newnan Division of the United States District Court for the Northern District of Georgia.

7.

Defendant Greenville has waived its sovereign immunity for Plaintiff's tort claims through the purchase of liability insurance to the extent of the limits of such policy pursuant to O.C.G.A. § 36-33-1(a).

**PARTIES**

8.

At all relevant times, Plaintiff was an "employee" of Defendant Greenville within the meaning of Title VII, 42 U.S.C. §2000e(f).

9.

Defendant Greenville is a municipal corporation in the state of Georgia and is subject to the jurisdiction and venue of this Court. Defendant Greenville may be served with a copy of this Complaint and process by serving Mayor Josephine Mahone-Stargell, 100 North Depot Street, Greenville, Meriwether County, Georgia 30222.

10.

At all times relevant to this action, Defendant Greenville was Plaintiff's "employer" as defined by Title VII, 42 U.S.C. § 2000e(b).

11.

Defendant Frazier is Greenville's Chief of Police.  He is sued in his individual capacity.

12.

Defendant Frazier is subject to the jurisdiction of this Court and may be served with process by personal service or leaving copies of the summons and complaint at his dwelling house or usual place of abode with some person of suitable age and discretion residing there, or by delivering a copy of the summons and complaint to an agent authorized to receive service of process.

13.

At all times relevant to this action, Defendant Greenville was a state actor within the meaning of the Constitution.

14.

At all times relevant to this action, Defendant Frazier was acting under color of state and local law.

## FACTUAL BACKGROUND

***Plaintiff Works for the Greenville Police Department
and is Subjected to Continuous Severe and Pervasive
Sexual Harassment by Defendant Frazier***

15.

Plaintiff began working for Defendant Greenville in the Greenville Police Department as a Police Officer beginning in 2013. She reported directly to Defendant Frazier, who became the Chief of Police in 2011 or thereabout.

16.

Beginning in or around 2014 through the end of her employment in November 2023, Defendant Frazier subjected Ms. Thornhill to a sexually hostile working environment and disparate treatment because of her sex (female). Plaintiff was the only female law enforcement officer during her tenure.

17.

Ms. Thornhill, who is white, has dated Black men in the past. Defendant Frazier, who is Black, knew this and felt that because of his race he was entitled to sexually harass and touch Ms. Thornhill in a sexual manner.

18.

After Ms. Thornhill started dating a man known to Defendant Frazier in or around 2014, Defendant Frazier would gesture to her genital area and make

comments such as, "Your pussy must be trimmed in gold, what do you have down there?" on a nearly daily basis.

19.

Defendant Frazier continued to make unwanted sexually harassing comments such as "you must have good pussy down there," and "it must be trimmed," throughout Ms. Thornhill's employment between 2014 and 2023. Defendant Frazier also propositioned Ms. Thornhill for sex in his home in approximately 2014, asking Ms. Thornhill to "come give me some."

20.

Ms. Thornhill repeatedly rebuffed Defendant Frazier's unwanted sexual advances, and made it clear to him that their relationship was strictly professional. Ms. Thornhill also repeatedly made complaints to Defendant Frazier to stop making harassing sexual comments and advances toward her, which Defendant Frazier ignored.

21.

Beyond his sexual harassment of Ms. Thornhill, Defendant Frazier also made constant demeaning and disgusting sexual comments about women generally, and specifically about other female employees of the City. For example, Defendant Frazier said in Ms. Thornhill's presence that a City employee used sex toys with

such frequency that she "ran down double D batteries." Ms. Thornhill also witnessed Defendant Frazier purchase Viagra from a known drug user while sitting in his office.

22.

Additionally, Defendant Frazier frequently allowed his friend, Richard Williams to come into the office and openly talk about having sex with women, how much he paid the women to have sex with him, and what he does to them sexually, all in the presence of Police Department employees.

23.

On one occasion, Mr. Williams told Ms. Thornhill, "You're going to give me that pussy" and grabbed her arm and twisted it in front of Defendant Frazier. Even though Defendant Frazier told Mr. Williams to stop, Defendant Frazier still continued to invite Mr. Williams to visit the Police Department.

24.

Although the City has a sexual harassment policy in place, it was logistically impossible for Ms. Thornhill to report Defendant Frazier's unlawful workplace conduct to the City Clerk, who performs the human resources functions for the City, including receiving complaints of workplace sexual harassment, because she and

Defendant Frazier are widely believed to have had a sexual relationship when they were teenagers.

*Defendant Frazier's Unlawful Conduct Worsens and*
*He Forcibly Rapes Ms. Thornhill*

25.

In or around 2018, Defendant Frazier's sexual harassment of Ms. Thornhill worsened after the Police Department moved into permanent office space.

26.

Several times, when Ms. Thornhill would walk into Defendant Frazier's office to ask him work related questions, Defendant Frazier would respond by saying, "Give me some of that" and express his desire to "fuck" her.

27.

When Defendant Frazier would ask Ms. Thornhill for technical assistance with his computer, he would lean over Ms. Thornhill while she sat in his desk chair and repeatedly committed acts of sexual assault and battery against Ms. Thornhill by running his hand up over her genital area over her clothes while making vulgar harassing statements of a sexual nature to her, such as "let me feel it" and "that pussy feels fat." This type of tortious sexual harassment occurred at least 100 times between 2018 and when Ms. Thornhill's employment ended in May 2023. To the best of Ms. Thornhill's recollection, the last time Defendant Frazier touched her

genital area at work in a sexually harassing manner without her consent was in April

2023.

28.

On one occasion in or around 2018, Defendant Frazier informed Ms. Thornhill

that he needed to stop by his home to "do something" while they were on patrol duty

together in the same vehicle. Ms. Thornhill held the rank of Corporal at the time.  As

Ms. Thornhill entered Defendant Frazier's residence, she looked around for his wife,

and was alarmed to discover that Mrs. Frazier was not home.

29.

Defendant Frazier, who is a large man, then walked Ms. Thornhill to a

bedroom next to the kitchen and pushed her down on a bed.  Defendant Frazier was

wearing a golf-style collared shirt with a knit badge and blue slacks, a belt, and duty

boots. The room was very small, and the bed took up nearly the entire room.

30.

After pushing Ms. Thornhill on the bed, Defendant Frazier told her to "give

[him] some." Ms. Thornhill replied no, and she attempted to laugh it off. During this

time, Defendant Frazier was standing between Ms. Thornhill's legs as she sat on the

bed. She pushed Defendant Frazier away but he said, "It's ok, Ms. Pat [his wife] is

gone."  Defendant Frazier would not take no for an answer, and he began to try to

unlock Ms. Thornhill's duty belt while she struggled for several minutes and repeatedly exclaimed, "This isn't right!   This is wrong!"   Defendant Frazier was eventually able to remove Ms. Thornhill's duty belt and proceeded to remove her pants and underwear against her will.   Defendant Frazier instructed her to "be still and stop acting."   Ms. Thornhill laid there with tears in her eyes while Defendant Frazier pushed his penis into her vagina and raped her.   Defendant Frazier did not use any form of protection while raping Ms. Thornhill and ejaculated inside her.

31.

Afterward, Ms. Thornhill went to the bathroom and became sick to her stomach. She told Defendant Frazier she wanted to go home. Defendant Frazier returned Ms. Thornhill to her car at the police station. Ms. Thornhill was terrified to tell anyone about what had happened because of the power that Defendant Frazier holds in Meriwether County.

32.

After Defendant Frazier forcibly raped Ms. Thornhill, she began to experience severe depression, anxiety and symptoms of post-traumatic stress.

33.

Defendant Frazier was aware that around this time, Ms. Thornhill was suffering domestic violence from her ex-husband. However, Defendant Frazier

would not prevent Ms. Thornhill's ex-husband from coming to the police station to harass and intimidate her because it was "a public place." Instead, Defendant Frazier informed Ms. Thornhill that she "needed to go to a psychiatrist."

34.

As the years passed, Defendant Frazier's unlawful conduct toward Ms. Thornhill continued unabated. For example, Ms. Thornhill had breast augmentation surgery in June 2021. When she returned to work, Defendant Frazier began asking to see her new breasts and feel them on a nearly daily basis. At least 40 times, Defendant Frazier asked Ms. Thornhill for technical assistance with his computer as a pretext to bend over Ms. Thornhill from behind and grab her breasts without her consent while she sat at his desk chair. This happened from the time of her return from surgery until the spring of 2023, shortly before her termination.

### *Ms. Thornhill is Humiliated, Forced to Resign in Lieu of Termination, and Defamed by Defendant Frazier*

35.

In January 2023, Ms. Thornhill learned that Defendant Frazier had spread rumors about her, specifically, falsely stating that he had reviewed video footage of Ms. Thornhill's office and saw her giving a man (with whom she had previously been in a relationship) oral sex while sitting at her desk.

36.

When Ms. Thornhill confronted Defendant Frazier about his false and defamatory sexually harassing statements, he denied it.

37.

Several times in early 2023, Defendant Frazier showed Ms. Thornhill gratuitous pornographic images at work that had been sent to him by Dexter Parks, a convicted felon.

38.

In April 2023, Defendant Frazier suspended Ms. Thornhill without pay for missing work when she was sick, even though she provided documentation from her physician to support her absence. Male police officers were not suspended when they missed work due to illness.

39.

On May 3, 2023, Ms. Thornhill was suffering from an upper respiratory infection. Defendant Frazier called an ambulance against her wishes because she was throwing up. When Ms. Thornhill refused to go to the hospital because she needed the work hours, Defendant Frazier cursed at her and asked if Ms. Thornhill "thought she was going to sit at her damn desk for the rest of the day." Defendant Frazier asked Ms. Thornhill why she was not going to the hospital or urgent care and

continued to berate her, and he discussed her medical situation in the presence of members of the public, which humiliated her.  Male police officers who became ill during work were not harassed and embarrassed in the same manner.

40.

Once Ms. Thornhill received a breathing treatment from EMTs, she was able to continue working, but subsequently decided to leave the Police Department to seek further treatment at an urgent care clinic.  After receiving care, Ms. Thornhill returned to the Police Department and confronted Defendant Frazier about the offensive and inherently discriminatory manner in which he had spoken to her earlier that day.  He responded by telling Ms. Thornhill that she was not going to, "walk up into his damn office and tell him how to speak."

41.

Ms. Thornhill expressed an intent to resign due to Defendant Frazier's unacceptable sexist conduct toward her.  However, the following day, Defendant Frazier asked Ms. Thornhill to hold off from resigning so that he could speak to then-Mayor Charlene Glover, "because when I retire, she [Mayor Glover] wanted [Ms. Thornhill] to be sitting in this office as the new chief."

42.

This was the first time that Ms. Thornhill was made aware that Mayor Glover wanted her to be Defendant Frazier's successor as Chief of Police. Defendant Frazier stated that things had gotten out of hand the day before, and that he did not want her to resign.  On that basis, Ms. Thornhill agreed not to resign her employment.

43.

On or about May 10, 2023, Ms. Thornhill received a call from Defendant Frazier asking if she could meet with him and the Mayor later that day. At the meeting, Mayor Glover threatened Ms. Thornhill that she had the option to resign or be terminated due to rumors she had "heard on the streets" about Ms. Thornhill, including that she had engaged in sexual activities with men living on the street, had sex with an elderly man, and gave a man oral sex at her desk at the Police Department.

44.

It was evident that Defendant Frazier had told Mayor Glover false and defamatory information of a sexual nature about Ms. Thornhill to get her fired, as part of a continued discriminatory hostile working environment based upon her sex, and to retaliate against her after she complained about his unacceptable sexist conduct.

45.

Because Ms. Thornhill had no other choice, she signed resignation papers under duress in lieu of termination. Ms. Thornhill was constructively discharged and her employment with Defendant City of Greenville ended on May 11, 2023.

46.

Following her resignation, Defendant Frazier continued to defame Ms. Thornhill to members of the public.  As a result, an offensive and defamatory social media post containing false information of a sexual nature about Ms. Thornhill was made on Facebook by at least one member of the public in or around July 2023, which read: "soo [sic] y'all , Tonya ( the police lady in Greenville ) really got caught and fired for sucking d***? [crying laughing emojis]."  Among many other crude responses, one person responded to the post:  "911: what the emergency? Me: send officer tonya [crying laughing emojis]."  Based upon these and many other similar false and defamatory statements, all disseminated to third parties by Defendant Frazier, Ms. Thornhill has suffered severe humiliation, professional reputational harm, and other indignities.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF THE
## EQUAL PROTECTION CLAUSE OF THE CONSTITUTION
**(*Asserted via 42 U.S.C. § 1983 Against Defendant Greenville only*)**

47.

Paragraphs 15 through 46 are incorporated herein by reference as if set forth fully herein.

48.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the laws, including equal protection with respect to gender.

49.

The Equal Protection Clause of the Fourteenth Amendment provides a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment.

50.

Defendant Frazier violated Plaintiff's rights to equal protection by, *inter alia*, subjecting Plaintiff to a sexually harassing and hostile working environment because of her sex, and subjected her to sex discrimination and sexual assault and battery.

51.

Defendant Frazier's conduct was a custom, usage or practice of Defendant

Greenville, promulgated by Defendant Frazier. At all times relevant to this action, Defendant Frazier was a policy maker for Defendant Greenville.

52.

Defendant Greenville violated Plaintiff's rights to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct even though it knew or should have known of Defendant Frazier's sexual harassment of Plaintiff.

53.

Defendants' conduct constitutes unlawful sexual harassment and discrimination, based upon gender, in violation of the Equal Protection Clause. Additionally and alternatively, Defendants' unlawful conduct constitutes sexual harassment culminating in an adverse employment action against Plaintiff.

54.

Defendants undertook all of the unlawful conduct giving rise to Plaintiff's claims while acting under color of State and local law, regulations, and customs or usages.

55.

Defendant Frazier, individually, violated clearly established law prohibiting sexually harassment of a subordinate in the workplace.

56.

Defendant Frazier undertook his unlawful conduct intentionally, recklessly and maliciously with respect to Plaintiff and her federally protected rights, entitling her to recover compensatory and punitive damages against him, individually.

57.

In failing to take any corrective action despite its actual or constructive knowledge of Defendant Frazier's unlawful conduct towards Plaintiff, Defendant Greenville ratified Defendant Frazier's conduct, and also exhibited deliberate indifference to Plaintiff's equal protection rights.

58.

Defendant Frazier, a final policymaker for Defendant Greenville's Police Department, violated clearly established law prohibiting sex discrimination in public employment when he, *inter alia*, engaged in discrimination and sexual harassment and forced Plaintiff to resign in lieu of termination, constructively discharging her.

59.

Defendant Greenville's actions were willful, wanton, and intentionally directed to harm Plaintiff.

60.

Defendant Greenville's actions were reckless and were taken in willful disregard of the probable consequences of its actions.

61.

As a direct and proximate result of Defendant's violations of the Equal Protection Clause, Plaintiff has suffered damages including lost wages, lost benefits, emotional distress, inconvenience, loss of benefits, humiliation, and other indignities.

## COUNT II
### DISPARATE TREATMENT ON THE BASIS OF SEX
### IN VIOLATION OF TITLE VII
#### (*Against Defendant Greenville Only*)

62.

Paragraphs 15 through 46 are incorporated herein by reference.

63.

Ms. Thornhill was subjected to disparate treatment based on her sex by Defendant Frazier, for which Defendant Greenville is liable as Defendant Frazier's employer.

64.

Defendant Greenville subjected Ms. Thornhill to disparate treatment when it, *inter alia*, subjected her to a severe or pervasive sexually hostile work environment and discriminatory sex-based comments by Defendant Frazier.

65.

Defendant Greenville subjected Ms. Thornhill to disparate treatment because of her sex compared to her similarly situated male counterparts.

66.

The above-pled actions of Defendant Greenville constitute sex discrimination in violation of Title VII.

67.

Ms. Thornhill's sex was a motivating factor in Defendant Greenville's decisions to take the above-pled discriminatory actions, even if her sex was not the only factor that motivated those decisions.

68.

The actions of Defendant Greenville in subjecting Ms. Thornhill to disparate treatment were willful, deliberate, and intended to cause Ms. Thornhill harm, and/or were committed with reckless disregard for the harm caused to Ms. Thornhill and were in derogation of her federally protected rights.

69.

As a direct and proximate result of Defendant Greenville's violations of Title VII, Ms. Thornhill has suffered damages, including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

70.

As a result of the above-pled violations of Title VII, Ms. Thornhill is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, front pay, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT III
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII
### (*Against Defendant Greenville Only*)

71.

Paragraphs 15 through 46 are incorporated herein by reference.

72.

Ms. Thornhill was subjected to a hostile work environment by Defendant Frazier, for which Defendant Greenville is liable as Defendant Frazier's employer.

73.

As outlined above, Ms. Thornhill was subjected to severe or pervasive sexual harassment, including sexual comments, sexual advances, sexual assault, sexual battery, rape, and unwanted physical touchings by Defendant Frazier.

74.

At all times relevant to this action, Defendant Greenville knew or should have known of Defendant Frazier's sexual harassment of Ms. Thornhill and the existence of a sexually hostile work environment, but failed to take remedial action to prevent or correct the harassment or protect Ms. Thornhill.

75.

Defendant Greenville failed to exercise reasonable care to prevent and promptly correct Defendant Frazier's harassing behavior.

76.

Defendant Greenville willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Ms. Thornhill was undertaken in bad faith.

77.

As a result of Defendant Greenville's unlawful actions, Ms. Thornhill has suffered emotional distress, inconvenience, humiliation, and other indignities.

78.

As a result of Defendant Greenville's violations of Title VII, Ms. Thornhill is entitled to recover any lost economic benefits of her employment, compensatory damages and reasonable attorneys' fees and costs, as well as equitable and injunctive relief.

**<u>COUNT IV</u>**
**ASSAULT**
***(Against Defendant Frazier Only)***

79.

Paragraphs 15 through 46 are incorporated herein by reference as if set forth fully herein.

80.

Defendant Frazier's sexual misconduct and actions against Plaintiff as described above made her reasonably frightened that she would be harmed by unwanted sexual touching of her person, constituting an assault under Georgia law.

81.

As a result of Defendant Frazier's unlawful actions, Plaintiff suffered emotional distress, inconvenience, humiliation, and other indignities.

## COUNT V
## BATTERY
### *(Against Defendant Frazier Only)*

82.

Paragraphs 15 through 46 are incorporated herein by reference as if set forth fully herein.

83.

Defendant Frazier's conduct and actions alleged herein toward Plaintiff amount to the unwanted and offensive touching of Plaintiff by Defendant Frazier, constituting a battery, indeed sexual battery under Georgia law.

84.

As a result of Defendant Frazier's unlawful actions, Plaintiff suffered emotional distress, inconvenience, humiliation, and other indignities.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *(Against All Defendants)*

85.

Paragraphs 15 through 46 are incorporated herein by reference as if set forth fully herein.

86.

Defendant Frazier intentionally, maliciously, wantonly and in gross and reckless disregard for Plaintiff's health and safety, engaged in extreme and outrageous conduct when he subjected Plaintiff to embarrassment, humiliation, degradation, and ridicule by sexually harassing her, subjecting her to rape, sexual assault and sexual battery, and touching her body without consent, thereby causing Plaintiff to suffer extreme emotional distress, mental anguish, humiliation, and other indignities.

87.

Defendant Frazier's conduct toward Plaintiff was objectively malicious, wanton, and wholly incompatible with the standards of society.

88.

Based on its actual or constructive knowledge of Defendant Frazier's sexual harassment, Defendant Greenville condoned, adopted, and ratified Defendant Frazier's conduct, making it liable for Defendant Frazier's intentional infliction of emotional distress upon Plaintiff.

89.

As a result of Defendants' unlawful actions, Plaintiff suffered emotional distress, inconvenience, humiliation, and other indignities.

## COUNT VII
## INVASION OF PRIVACY
### *(Against All Defendants)*

90.

Paragraphs 15 through 46 are incorporated herein by reference as if set forth fully herein.

91.

The tort of invasion of privacy is actionable under Georgia law upon proof that an individual unreasonably intruded into another person's private concerns in a manner that "would be offensive or objectionable to a reasonable person." *Troncalli v. Jones*, 237 Ga. App. 10, 14, 514 S.E.2d 478, 482 (1999).

92.

Defendant Frazier's actions described above involving unwanted sexual assault, battery, rape and other inappropriate touching of Plaintiff constitutes the tort of invasion of privacy under Georgia law.

93.

At all relevant times, Defendant Frazier was acting in the course and scope of his employment with Defendant Greenville, making Defendant Greenville vicariously liable for the actions of Defendant Frazier under a theory of *respondeat superior*.

94.

Based on Defendant Greenville's actual or constructive knowledge of Defendant Frazier's misconduct and propensity for the same, coupled with its failure to intercede on Plaintiff's behalf, Defendant Greenville condoned, adopted, and ratified Defendant Frazier's conduct, making Defendant Greenville also liable for his actions.

95.

As a result of Defendants' unlawful actions, Plaintiff has suffered emotional distress, inconvenience, humiliation, and other indignities.

**<u>COUNT VIII</u>**
**DEFAMATION**
*(Against Defendant Frazier only)*

96.

Paragraphs 15 through 46 are incorporated herein by reference as if set forth fully herein.

97.

Defendant Frazier's statements to other individuals regarding Plaintiff's alleged sexual conduct and practices are false and defamatory.

98.

Defendant Frazier's statements were false, made with malice, and intended to harm Plaintiff.

99.

Defendant Frazier's false statements referred to Plaintiff's profession in law enforcement and were calculated to injure her, constituting slander per se for which damage is inferred.

100.

Plaintiff has endured emotional distress and reputational harm, both as a law enforcement professional and a private citizen, as the result of Defendant Frazier's false statements.

101.

Plaintiff is entitled to recover compensatory damage for the emotional distress Defendant Frazier has caused her by damaging her personal and professional reputation in the City of Greenville and the surrounding area, most significantly with members of the public.

102.

Plaintiff is also entitled to recover punitive damages as a result of Defendant Frazier's false and malicious statements.

## COUNT IX
## NEGLIGENT RETENTION AND/OR NEGLIGENT SUPERVISION
### *(Against Defendant Greenville Only)*

103.

Paragraphs 15 through 46 are incorporated herein by reference.

104.

Throughout Plaintiff's employment, Defendant Frazier regularly and repeatedly subjected Plaintiff to sexual advances, sexual innuendos, rape, sexual assault, sexual battery, offensive touching, and other forms of sexual harassment.

105.

Plaintiff expects that discovery will reveal that Defendant Frazier sexually harassed other female employees of Defendant Greenville in a similar manner during his tenure as Chief of Police.

106.

Upon information and belief, Defendant Greenville was aware of Defendant Frazier's propensity for sexual harassment of Plaintiff; yet, Defendant Greenville continued to require Plaintiff to report to, and interact with, Defendant Frazier, and did not discipline Defendant Frazier for his unlawful conduct.

107.

Defendant Frazier's continual sexual harassment, assault and battery of Plaintiff created an intimidating, hostile, and offensive working environment for her.

108.

Defendant Greenville failed to take any remedial action toward Defendant Frazier, despite his established propensity for egregious conduct toward Plaintiff.

109.

Defendant Frazier continuously harassed Plaintiff and forced her to resign in lieu of termination.

110.

Defendant Greenville took no steps to correct the sexually harassing work environment that existed.

111.

The sexually harassing work environment included, but was not limited to, inappropriate comments, forcible rape, and repeated sexual assault and sexual battery and other unwanted touchings by Defendant Frazier.

112.

Defendant Greenville continues to employ Defendant Frazier when it actually knows, constructively knew, or in the exercise of reasonable care should have

known, of Defendant Frazier's propensity for sexual harassment directed toward Plaintiff.

113.

Notwithstanding Defendant Greenville's actual or constructive knowledge of Defendant Frazier's propensity for sexual harassment, Defendant Greenville negligently supervised Defendant Frazier, failed to intercede on Plaintiff's behalf, and negligently retained Defendant Frazier, thereby ratifying, condoning, and adopting his conduct, making Defendant Greenville liable for the negligent supervision and retention of Defendant Frazier.

**<u>COUNT X</u>**
**BREACH OF LEGAL DUTY UNDER O.C.G.A. § 51-1-6**
***(Against All Defendants)***

114.

Paragraphs 15 through 46 are incorporated herein by reference.

115.

Defendants' action and omissions stated in this Complaint violate public and private duties guaranteed to Plaintiff under O.C.G.A. § 51-1-6.

116.

In addition to violating their duties to Plaintiff, Defendants committed intentional torts upon Plaintiff.

32

117.

All of the acts and omissions complained of in this lawsuit are such acts or omissions as those contemplated by O.C.G.A. § 51-1-6 to be tortious acts against Plaintiff.

## COUNT XI
### PUNITIVE DAMAGES UNDER O.C.G.A. § 51-12-5.1
*(Against Defendant Frazier Only)*

118.

Paragraphs 15 through 46 are incorporated herein by reference.

119.

All of Defendant Frazier's unlawful conduct set forth herein was intentional, willful, malicious, and conducted with the deliberate intent to harm Plaintiff, or was done with reckless disregard for Plaintiff and her rights.

120.

Accordingly, Defendant Frazier is liable to Plaintiff for punitive damages.

## COUNT XII
### ATTORNEYS' FEES AND COSTS UNDER O.C.G.A. § 13-6-11
*(Against All Defendants)*

121.

Paragraphs 15 through 46 are incorporated herein by reference.

122.

By their actions described above, and by their stubborn litigiousness prior to and during this lawsuit, Defendants acted in bad faith, were stubbornly litigious, and put Plaintiff through unnecessary trouble and expense.

123.

Thus, under O.C.G.A. § 13-6-11, Plaintiff is entitled to recover her attorneys' fees and expenses incurred in prosecuting this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A.   That this Court take jurisdiction of this matter;

B.   That process be served;

C.   That Plaintiff be awarded a declaratory judgment that Defendants violated Title VII, the Constitution and Georgia law, as described above;

D.   That this Court enter a permanent injunction, prohibiting Defendants from engaging in unlawful employment practices, including unlawful sex discrimination, sexual harassment, assault, battery, defamation, invasion of privacy, and negligent hiring, retention, supervision;

E.      That this Court award Plaintiff her full back pay and reinstatement or front pay in lieu thereof, in an amount to be determined at the trial of this case;

F.      Prejudgment interest and post-judgment interest;

G.      That this Court award compensatory damages in an amount to be determined by the trier of fact;

H.      That this Court award punitive damages for Defendant Frazier's willful violations of the law in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendant Frazier for his conduct toward Plaintiff and deter him from similar conduct in the future;

I.      That this Court award Plaintiff her costs in this action and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, O.C.G.A. § 13-6-11, and other applicable laws;

J.      That this Court grant Plaintiff the right to have a trial by jury on all issues triable to a jury; and

K.      That this Court grant such additional relief as this Court deems proper and just.

Respectfully submitted this 2nd day of July, 2024.

/s/ Ashley Wilson Clark
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@bbwmlaw.com
Ashley Wilson Clark
Georgia Bar No. 771512
awilsonclark@bbwmlaw.com
**BUCKLEY BALA WILSON MEW LLP**

600 Peachtree Street NE, Suite 3900
Atlanta, GA 30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101
*Counsel for Plaintiff*